**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **STACY NUSS, as independent administrator of the ESTATE OF CODY BRITTAIN,** | § § § § | **CIVIL ACTION NUMBER:** **3:18-cv-02192-X** |
| *Plaintiff,* | § | |
| vs. | § § | |
| **CITY OF SEVEN POINTS, TEXAS, et al,** | § | |
| *Defendants.* | § | |

**DEFENDANT MATTHEW GREINER'S REPLY BRIEF TO PLAINTIFF'S RESPONSE (ECF 62) TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF 52-53)**

COMES NOW Matthew Greiner, one of the Defendants herein, and files this his Reply Brief to Plaintiff's Response (ECF 62) to Defendant's Motion for Summary Judgment (ECF 52-53), and would respectfully show the Court as follows:

### I. Index to this Reply Brief

I.   Index to this Reply Brief ..................................................................................................1

II.  Plaintiff Falsely Concludes that Brittain Displayed Suicidal Tendencies
     and that Greiner "Did Nothing" .....................................................................................1

III. Plaintiff Improperly Uses "Collective Knowledge" ............................................................7

IV.  An Expert Report is Not Proper Evidence in a Qualified Immunity Analysis......................8

V.   Objections to Affidavit of Aubrey Land (Plaintiff's Exhibit 14)..........................................9

### II. Plaintiff Falsely Concludes that Brittain Displayed Suicidal Tendencies and that Greiner "Did Nothing"

#### a. The Facts

Throughout her Response, Plaintiff repeatedly suggests that Brittain had "several serious medical problems" that provided Greiner with actual knowledge of Brittain's alleged suicidal tendencies. (ECF 62-1, p.p.7-8, 9-10, 40, 41-42) These allegations are categorically not true. At most, the arguments presented by Plaintiff demonstrate that Brittain was intoxicated and

1

sporadically belligerent and unruly. There were no statements made by Brittain and no actions taken by Brittain that provided Greiner with actual knowledge that Brittain had suicidal tendencies.

### i. Book-In Statement

During the book-in process, Greiner heard Brittain say that he had "head problems" and/or was "messed up in the head" or words to that effect. Greiner had no idea what Brittain was referring to from these statements. (*See* Appx. p. 2, ¶5)  Officer Gomez calmed Brittain down and asked him all the book-in questions. Brittain answered *all* the medically related book-in questions "no", including "no" to the "*suicidal tendencies*" question. (*See* Appx. p. 2, ¶5)  Nothing about this book-in encounter with Brittain placed Greiner (or any reasonable police officer, for that matter) on actual notice that Brittain had any suicidal tendencies.

### ii. Intoxication and Acting Out

After the book-in process, Officer Gomez told Greiner that he thought Brittain was possibly on drugs because his eye pupils were pinpoints. This was nothing unusual because individuals who are intoxicated are frequently arrested and put in jail. This also rationalized, in Greiner's mind, why Brittain was acting out and being a little difficult. (*See* Appx. p. 2, ¶6)

While Greiner was out on patrol, it was reported to him by Dispatcher Taylor that Brittain was acting rowdy by yelling and waiving his shirt around and throwing things from his jail cell. (*See* Appx. p. 2, ¶9) Greiner called Sgt. Brandon Young and reported what he had been told by Dispatcher Taylor. Greiner also decided to go to the Police Department in the event Sgt. Young needed assistance. Upon arrival, he observed Sgt. Young calming Brittain down, and he further observed Sgt. Young allow Brittain to make a phone call. Greiner did not listen to the phone call. Brittain was later placed back in the jail cell without incident. (*See* Appx. p. 2, ¶9)

### iii. Subsequent Calm Demeanor

In the hours leading up to midnight, Greiner came back to the Police Department several times. Even though the dispatcher was frequently checking on Brittain, Greiner would walk back to the jail cell and check on him as well. (*See* Appx. p. 2, ¶11-12) On each occasion, Greiner noted that Brittain was fine and not in any kind of distress. After midnight (at 12:32 a.m.), Greiner was at the Police Department and checked on Brittain again. This time, Greiner noted on the log that Brittain was "sitting on floor awake, said he's fine". (*See* Appx. p. 2, ¶11-12)

### iv. Immediate Response at First Sign of Trouble

After confirming Brittain's wellbeing, Greiner left the Police Department to conduct an interview on another case in Eustace, Texas (about 20 minutes away). (Greiner Appx. p. 2, ¶13) While in Eustace, Texas, Greiner received a call from the dispatcher alerting him that Brittain had threatened to harm himself. Greiner *confirmed* that the dispatcher should request assistance from Tool Police Department because those officers could reach Brittain faster than Greiner could. (Greiner Appx. p. 2, ¶13) Indeed, a Tool PD officer arrived in just 5 minutes. (Plaintiff's Appx., p. 381) Thus, at the first indication of trouble, Greiner rendered aid in the best way he could – by requesting the dispatcher to summon the nearest available officers. (Greiner Appx. p. 2, ¶13)

### b. The Law

The following cases demonstrate that *none* of the words or actions of Brittain, as a matter of law, gave Greiner actual knowledge that Brittain had suicidal tendencies. In *Branton v. City of Moss Point*, 261 Fed. Appx. 659, 660-661 (5th Cir. 2008), police officers arrested an intoxicated individual for DWI (1) who fought with the arresting officers, (2) who stated that his arrest would cause him to "lose his job, home, and everything"; and (3) who made the comment that "his life was going to be over and that [the officer] might as well shoot him." Shortly after being placed in

3

the jail cell, the individual hung himself. *Id.* at 660. The Fifth Circuit found that:

> even accepting these facts as true, we conclude that this evidence does not demonstrate that Appellants had actual knowledge of a substantial risk of suicide. People who are violent to others often are not violent to themselves. Therefore, unsurprisingly, courts have not considered a detainee fighting with police officers as evidence that the detainee was suicidal.

*Id*. at 661 (citing *Lambert v. City of Dumas*, 187 F.3d 931, 934, 937-38 (8th Cir. 1999). The Fifth Circuit further concluded that:

> [w]hile [the individual] also made comments indicating that he was exasperated with living, we do not believe that these off-hand, cavalier comments made by someone who was intoxicated so significantly alters the calculus that a reasonable jury could infer that Appellants had actual knowledge that there was a substantial risk that [the individual] would kill himself. Accordingly, we find that the district court erred when it denied Appellants' motion for summary judgment.

*Id*. at 661.

In *Grayson v. Reed*, 195 F.3d 692, 694 (4th Cir. 1999), an individual was found "acting crazy" in a mall restroom. Law enforcement officers arrived, the individual resisted, drugs were found on his person and he was subsequently arrested. *Id.* The individual was transported to a detention center where he acted "irrationally", had "slurred speech" and continued to physically resist the officers. *Id*. Due to his continued violent actions, the individual was placed in a "four-point restraint" and put in a cell. *Id*. Very shortly thereafter, the individual stop breathing. *Id*. He was taken to the hospital and died the next day. *Id*. In addressing whether the arresting officer was deliberately indifferent to the individual's medical needs, the Fourth Circuit noted that "deliberate indifference is a very high standard – a showing of mere negligence will not meet it". *Id.* at 695 (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences". *Id*. at 696. The Fourth Circuit then addressed the issue of the individual's behavior and intoxication by stating:

4

>His symptoms hardly distinguish him from the multitude of drug and alcohol abusers the police deal with everyday. [The individual] was found in possession of drugs while acting irrationally and slurring his speech. However, an officer could hardly be faulted under *Estelle* for believing that [the individual] needed nothing so much as to sleep it off. **To accept appellant's claim would be to mandate as a matter of constitutional law that officers take all criminal suspects under the influence of drugs or alcohol to hospital emergency rooms rather than detention centers.[1]  That would be a startling step to take**.

*Id*. at 696.

In *Nunez v. Deviney*, 2007 U.S. Dist. LEXIS 51683, p. 2 (N.D. Tex., Fort Worth - 2007), two police officers arrested an individual for public intoxication and transported him to the city jail. Upon arrival at about 9:00 p.m., the individual became irritated and combative. *Id.* Before the book-in process was complete, the officers placed the individual in a cell to calm down. *Id*. The officers removed items from his pockets, but did not remove his shoes or shoelaces. *Id*. No one checked on the individual until 6:00 a.m. the next morning. *Id.* The individual was found hanging by his shoelaces. *Id.* The individual's family sued claiming the officers should have removed his shoelaces and should have monitored him more closely. *Id*. at 4-5. The District Court first noted that although the individual was intoxicated and combative, "this conduct does not, in and of itself, alert the officers that Nunez was a suicide risk". *Id*. at 7 (citing *Posey v. Southwestern Bell Tel. L.P.*, 430 F. Supp. 2d 616, 623 (N.D. Tex. 2006) (finding hostility and belligerence of detainee insufficient to establish jail personnel were deliberately indifferent to whether detainee was a suicide risk). The *Nunez* court also cited *Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993) for the established statement of law that **"police personnel are not require to unerringly detect suicidal tendencies"**. **"The latter requires the skills of an experienced medical professional

---

[1] The Fifth Circuit very recently cited this proposition with approval.  *See Baldwin v. Dorsey*, 964 F.3d 320, p.11 (5th Cir. 2020).

5

**with psychiatric training, an ability beyond that required of the average police officer by the due process clause"**. *Burns v. Galveston*, 905 F.2d 100, 104 (5th Cir. 1990).  Second, and addressing the argument that the individual was "depressed", the *Nunez* noted "the concept that pretrial detainees are commonly depressed when incarcerated is a generality that does not suffice as the kind of exceptional circumstance or obvious risk that would support an inference that defendants knew of a substantial risk of harm".   *Nunez*, 2007 U.S. Dist. LEXIS 51683, p. 8-9.

### c. Plaintiff Testified Brittain Had No Suicidal Tendencies

It is certainly disingenuous for Plaintiff to claim Greiner should have recognized Brittain's alleged "suicidal tendencies" (during his very limited interaction with him), when she herself did not. Despite being Brittain's closet relative, and despite Brittain's years of reported mental health issues and street drug use, and despite Brittain's residency at the House of Benjamin, and despite the fact that Plaintiff knew Brittain had a "*lot of stuff going on in his head*", Plaintiff testified that she *never* observed anything, and *never* heard anything, that made her feel like Brittain had the potential to commit suicide. (*See* Appx. p. 17, 30) Brittain *never* threatened to commit suicide, *never* threatened to harm himself, and *never* demonstrated suicidal tendencies. (*See* Appx. p. 29-30) In fact, Plaintiff testified to the opposite - that Brittain was scared of death. (*See* Appx. p. 30)

### d.   Greiner and the Other Officers are Not Medical Professionals

"Police personnel are not required to unerringly detect suicidal tendencies". *Evans v. City of Marlin*, 986 F.2d 104, 107 (5th Cir. 1993). "The latter requires the skills of an experienced medical professional with psychiatric training, an ability beyond that required of the average police officer by the due process clause". *See Burns v. Galveston*, 905 F.2d 100, 104 (5th Cir. 1990). Greiner is not a medical professional with psychiatric training. None of the actions and words of Brittain, as a matter of law, were indicative of suicidal tendencies to Greiner or any reasonable

6

police officer.

### III. Plaintiff Improperly Uses "Collective Knowledge"

As set forth in Defendant's Motion for Summary Judgment, "[t]o show that the right to medical care has been violated, a plaintiff must establish that 'the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference.'" *Hines v. Henson*, 293 Fed. Appx. 261, 263 (5th Cir. 2008). However, the "subjective knowledge" prong is that of the officers individually, *not collectively*. *See Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir.2007) ("The district court erred in considering the officers' actions together, and we instruct the court to consider the officers' actions separately on remand"); *see also Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883-84 (5th Cir. 2004) (examining the culpability of each defendant individually to determine if they deprived the plaintiff of a constitutional right); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999) ("each defendant's subjective deliberate indifference, *vel non*, must be examined separately").

In her Section entitled "[t]he Individual Officers Violated Brittain's Fourteenth Amendment Rights", Plaintiff improperly uses "collective knowledge" upon the individual Defendants. Plaintiff lumps all the individual Defendants together in her arguments. Repeatedly, Plaintiff makes a general (<u>often misleading or entirely inaccurate</u>) statement as to all the individual Defendants, but then only cites to the testimony of one or two Defendants.[2]  Plaintiff's use of "collective knowledge" is improper. Thus, all of Plaintiff's references to the "collective knowledge" of the Defendants should be entirely disregarded by the Court.

---

[2] Plaintiff also repeatedly claims that "head problems" prevented Brittain from answering book-in questions. This argument flatly ignores the undisputed testimony that, after Officer Gomez calmed Brittain down, Brittain answered all the book-in questions. (*See* Appx. p. 2, ¶5)

7

### IV.    An Expert Report is Not Proper Evidence in a Qualified Immunity Analysis

The defense of qualified immunity involves questions of law, not fact. *See Williams v. Bramer,* 180 F.3d 699, 703 (5th Cir.1999) ("objective reasonableness is a matter of law for the courts to decide, not a matter for the jury."); *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (holding that whether a right is clearly established is question of law for the court); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005)("this court has repeatedly held that objective reasonableness in a qualified immunity context is a question of law for the court to decide, not an issue of fact."); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) ("[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion"); *Marlin v. Moody Nat'l Bank, N.A.,* 248 F. App'x 534, 540-41 (5th Cir. 2007) (expert opinions about a defendant's state of mind or his culpability are legal conclusions).

*In City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015), the Supreme Court rejected the plaintiff's expert report because "a plaintiff cannot 'avoi[d] summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless.'" *Id*. (citing *Billington v. Smith*, 292 F. 3d 1177, 1189 (9th Cir. 2002). While Plaintiff has presented the declaration of Aubrey Land (Plaintiff's Exhibit 14) for the proposition that Brittain should have been transported to a mental health facility, this opinion is nothing more than impermissible 20/20 hindsight. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Consequently, expert testimony offering opinions with respect to the qualified immunity analysis is improper because it invades the province of the court to resolve such issues. *Johnson v. Ball*, 2015 U.S. Dist. LEXIS 29659, p. 5 (E. D. Mo. 2015). For this reason, the Court should entirely disregard the declaration of Aubrey Land.

8

### V. Objections to Affidavit of Aubrey Land (Plaintiff's Exhibit 14)

In addition to being improper evidence, Land's expert report/declaration is fraught with the following objectionable legal conclusions and misstatements:

1. Greiner objects to Land's recitation of "facts" without citing any source for such "facts".

2. Greiner objects to Land's recitation of "facts" and factual conclusions which are not supported in the record:

    a. Land states, "Upon his arrest he informed the booking officer, Officer Gomez, that he had mental issues..." Plaintiff's Exh. p. 428. This allegation is absolutely false and is wholly unsupported in the evidence.

    b. Land cites a counselor telling Officer Young that Brittain "showed signs of mental disease and needed psychiatric help". *Id.* The evidence, however, is that the counselor never told Young that Brittain needed psychiatric help or was suicidal or needed to be transferred to another facility. The counselor did say that Brittain *might* be showing signs of schizophrenia. (Plaintiff's Exh. pp. 63-66) It should be noted that there is no evidence that the counselor is a mental health professional.

    c. Land concludes that Brittain "showed multiple signs of suicidal ideations to the staff", without identifying what acts and which staff.

3. Greiner objects to Land's improper attempt to attribute the knowledge of one officer to all officers (i.e. "collective knowledge"). Land constantly opines that a statement made to one officer, often an unidentified officer, is knowledge of the "staff" or of "Young, Greiner and Bee-Taylor". The law is clear that each officer's knowledge must be analyzed separately and one officer's knowledge cannot be attributed to the whole. *Hines* at 263; *Meadows* at 421-22.

4. Greiner objects to Land's application of the wrong legal standard for qualified immunity. At times, Land appears to be applying a negligence standard, arguing that Brittain "should have been transferred" and was "left without proper supervision". "[N]egligence is and insufficient basis on which to state a claim...." *Hare* at 328. At another point, Land asserts that Greiner acted "intentionally and recklessly". The subjective standard of deliberate indifference, however, does

not apply to an analysis of qualified immunity, which requires analysis based on objective reasonableness. *Id.* at 329. Land does not appear to even know the proper legal standard and never uses the term qualified immunity or objective reasonableness. Having applied the wrong standard, Land's opinions are both defective and irrelevant.

5.     To the extent that Land bases opinions on the alleged failure by Greiner to provide suicide prevention precautions, such opinions should be disregarded. The Supreme Court ruled in 2015 that "an incarcerated person's right to the proper implementation of adequate suicide prevention protocols" in not clearly established law. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).

Greiner requests that the above objections be sustained.

Respectfully submitted,

**BOON CALK ECHOLS COLEMAN & GOOLSBY, PLLC**
1800 W. Loop 281, Suite 303
Longview, Texas 75604
(903) 759-2200-telephone
(903) 759-3306-facsimile
Email: darren.coleman@boonlaw.com
Email: bradley.echols@boonlaw.com

BY:     *Darren K. Coleman*
          DARREN K. COLEMAN
          SBN: 04558570
          Attorney-in-Charge
          BRADLEY R. ECHOLS
          SBN: 06390450

*ATTORNEYS FOR DEFENDANT*
*MATTHEW GREINER*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record via electronic ECF filing on this the 13th day of August 2020.

*Darren K. Coleman*
DARREN K. COLEMAN